**Dated: May 28, 2025**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PHILLIP D. CONKLE, | ) | Case No. 23-12292-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SKYLINE AIR OPS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 23-01053-SAH |
| | ) | |
| PHILLIP D. CONKLE, | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On April 28, 2025, the Court conducted a trial in this adversary proceeding based on the following:

1. Amended Complaint to Determine Dischargeability of Debt [Doc. 4], filed on October 23, 2023 (the "Complaint"), by plaintiff Skyline Air Ops, Inc. ("Skyline");

2. Response to Complaint to Determine Discharge of Debts [Doc. 7], filed on November 15, 2023 (the "Answer"), by debtor and defendant Phillip D. Conkle ("Conkle"); and

3. Final Pretrial Order [Doc. 25], entered on April 30, 2024 (the "Final Pretrial Order").

Skyline appeared by and through Robert D. Gifford, Jessica Ridenour and Hunter Gray; and Conkle appeared by and through Mike J. Rose.

## JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I). Additionally, the parties consented to this Court's entry of final orders pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012. [Docs. 4, 7].

## BACKGROUND

Skyline, through its general contractor, hired Conkle to perform work on an airplane owned by Skyline. Conkle completed the work, and Skyline believes Conkle was paid in full immediately after completing the work and submitting invoices. Conkle, however, sometime after completion of the work, began demanding additional payment from Skyline for $3,548.00. When he did not receive payment, Conkle filed a mechanic's lien on the airplane through the Federal Aviation Administration ("FAA"). As a result of filing the lien, Skyline was unable to close a sale involving the airplane. Thereafter, Skyline filed suit against Conkle, which resulted in Conkle releasing the lien without payment from Skyline. Nevertheless, Skyline continued prosecuting its action and obtained a judgment for damages against Conkle. Skyline now seeks

2

to have the judgment debt excepted from Conkle's discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (6).[1]

### FINDINGS OF FACT

In the Final Pretrial Order, Conkle did not identify any witnesses or exhibits. In accordance with this Court's form final pretrial order, the Final Pretrial Order expressly provides no unlisted witnesses will be permitted to testify as a witness in chief except by leave of court where justified by exceptional circumstances. Final Pretrial Order, pp. 4-5. Similarly, Conkle did not list any exhibits in the Final Pretrial Order, which also provides no exhibit not listed will be admitted into evidence unless the Court allows for good cause shown and justice requires. Final Pretrial Order,[2] pp. 2-3. These limitations on Conkle's presentation of his case are important because Skyline rested following its presentation of only one witness, Mr. Robert Allen, Skyline's president ("Allen"). Conkle then immediately rested, not calling any witnesses,[3] and moved for judgment in Conkle's favor. The Court considered the request and granted it based on Skyline's failure to satisfy its burden of proof. After judgment was granted against Skyline, it moved to reopen the case to receive additional evidence of intent; the Court denied Skyline's request. A motion to reopen a case to receive additional evidence is committed to the sound discretion of the trial court and will be reversed only for abuse of discretion. Morsey v. Chevron, USA, Inc., 94 F.3d 1470, 1477 (10th Cir. 1996) (citing Sanders v.

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

[2] For the sake of clarity, the Court notes the Final Pretrial Order was approved by Conkle's former counsel. Conkle and his current counsel were bound by its terms and limitations.

[3] Conkle would not have been permitted to call himself as a witness given his failure to identify any potential witness in the Final Pretrial Order.

International Ass'n of Bridge, Structural & Ornamental Iron Workers, 546 F.2d 879, 882 (10th Cir.1976)). Skyline's request simply came too late.

Skyline clearly felt Allen's testimony established its Section 523(a)(2)(A) and (a)(6) claims, but Skyline was mistaken. Conkle had no right to present himself as a witness at trial in the absence of Skyline calling him. If Skyline wanted his testimony as part of the trial record, it was incumbent upon Skyline to present him as a witness. While the Court is baffled with Skyline's choice given the difficult burden of establishing fraudulent intent under Section 523(a)(2)(A) and willful and malicious intent under Section 523(a)(6), the choice was Skyline's to make, and it suffers the consequences of its own litigation tactic.

The relevant findings of fact[4] are:

1. Conkle is a natural person and a resident of the State of Oklahoma. Stipulated Fact ¶ 8.[5]

2. Skyline is a Virginia limited liability company. Stipulated Fact ¶ 9.

3. Allen is the president of Skyline, which is an aircraft management company. He is himself a pilot and has been involved and worked in various businesses and mechanical opportunities in the aircraft industry. His principal occupation is as the chief executive

---

[4] All facts not based on the Stipulated Facts or exhibits are derived from Allen's testimony.

[5] The Final Pretrial Order contained the stipulated facts of Skyline and Conkle ("Stipulated Facts"). The parties' Stipulated Facts are "binding and conclusive" and "not subject to subsequent variation." Gaedeke Holdings VII, Ltd. v. Stamps Bros. Oil & Gas, LLC, No. CIV-19-344-F, 2025 WL 66771, at *6 (W.D. Okla. Jan. 10, 2025) (citing Christian Legal Soc. Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez, 561 U.S. 661, 677 (2010)). The Court notes, while it may be bound by the Stipulated Facts, the Stipulated Facts are bereft of any suggestion or hint of Conkle's intent, which is of paramount importance in adversary proceedings under Section 523(a)(2)(A) and (6).

4

officer of a medical group practice, and he holds a Doctor of Optometry. Allen works on Skyline matters in his free time.

4. Skyline is the owner of a Cessna, T310Q, Serial No. 310Q-0535, with FAA No. N757CA (the "Aircraft"). Stipulated Fact ¶ 1.

5. During the second half of 2018 and the first quarter of 2019, the Aircraft underwent a refurbishment under the direction of Skyline's contractor ("Contractor") in Oklahoma.

6. Allen testified the Aircraft was located at Sundance Airport while it was undergoing refurbishment.[6]

7. Contractor hired Conkle, as a subcontractor, to recover interior panels in the Aircraft.

8. Allen testified he received the first Conkle invoice through Contractor in August 2018 and paid it by check through Contractor.

9. The next two Conkle invoices were received directly from Conkle by text in December 2018, and Allen paid them directly to Conkle by check.[7]

10. Allen testified he asked Conkle if the third invoice was the final invoice and was told it was the final amount due.

11. Allen recalled seeing no further invoices.[8]

12. Allen claims a total of $6,000.00-7,000.00 was paid to Conkle based on three invoices.

---

[6] Allen testified Conkle is a "liar" if he claims he worked on the Aircraft at Wiley Post Airport rather than Sundance Airport in Oklahoma.

[7] Allen testified he had three invoices and three checks evidencing payment. The Conkle invoices, and Skyline checks in payment thereof, were not presented as exhibits at trial and are not part of the record.

[8] However, later in the trial, Allen admitted having seen (and by inference reviewed) a fourth invoice.

5

13. After the work was completed in early March 2019,[9] Contractor flew the Aircraft to Addison, Texas.

14. At some point, Allen hired a broker to market and advertise the Aircraft for sale, and several people were interested. However, no sale could close until clear title was obtained.

15. Title to an aircraft is critical to the FAA and the value of an aircraft. Typically, buyers require clean title when purchasing an aircraft.

16. Conkle introduced Rebuttal Exhibit 1 which is an invoice from Conkle to Skyline with a date of February 24, 2019, for 176 hours of labor and $500.00 owed from the initial invoice payment because $500.00 was deducted therefrom by Contractor (the "Final Invoice").

17. Allen initially denied ever seeing the Final Invoice. Skyline's failure to introduce the first three invoices rendered it impossible to determine if the Final Invoice was similar to the first three invoices. Additionally, Allen's later testimony contradicted his testimony he had never seen the Final Invoice since he eventually admitted it had been provided and reviewed.

18. Allen testified he heard nothing from Conkle after December 2018 until early June 2019. Then, Conkle reached out to Allen and was initially looking for Contractor because Contractor owed him $500.00 (which had been removed from the payment Contractor made on Conkle's first invoice before Contractor remitted payment to Conkle). In this initial conversation with Allen, Conkle made no mention of the additional $3,548.00 due.

---

[9] Allen originally testified he had not seen Conkle's work in person. Later, Allen admitted he had seen the Aircraft in January 2019 at Wiley Post Airport.

19. Allen reached out to Contractor who said everything had been paid.

20. Allen originally testified he had not seen the work performed by Conkle, claiming until Allen learned about the Mechanic's Lien, he had not seen the Aircraft, which had been placed with a broker for sale in the summer of 2019. Nevertheless, Allen later admitted he had seen the Aircraft in January 2019 in Oklahoma City.

21. Allen had numerous conversations with Conkle by phone and by text about payment, with Conkle eventually sending the Final Invoice and requesting payment thereof by Skyline.

22. Allen eventually blocked Conkle on his phone.

23. The FAA records reveal Conkle filed a Mechanic's Lien against Skyline for $3,548.00, dated July 9, 2019, filed on July 11, 2019, but not recorded with the FAA until August 15, 2019, at Conveyance No. GR006387 (the "Mechanic's Lien"). Stipulated Fact ¶ 2.

24. Allen received notice of the Mechanic's Lien on the Aircraft from the FAA by letter in August 2019 and then contacted legal counsel to clear title so the Aircraft could be sold.

25. The Mechanic's Lien provided Conkle last performed work on the Aircraft on March 30, 2019. Stipulated Fact ¶ 3. However, no work was completed on the Aircraft after December 2018. Stipulated Fact ¶ 4.

26. The Mechanic's Lien was not filed with the FAA within the statutory time, i.e. 120 days from the last day work was performed, and therefore is void, invalid, and of no force or effect. Stipulated Fact ¶ 6.

27. Aircraft flight logs through FlightAware established the Aircraft was not in Oklahoma on March 30, 2019, and, in fact, left Oklahoma on March 7, 2019. Stipulated Fact ¶ 5.

28. The FlightAware log for the Aircraft for December 16, 2018, through October 15, 2019, was introduced as part of Skyline's Exhibit 3 (specifically p. PX1.00043) and reflects the Aircraft was flown from Terre Haute to Branson and finally to Oklahoma City, specifically Wiley Post Airport, on December 16, 2018. The Aircraft remained at Wiley Post Airport in Oklahoma City from December 16, 2018, until March 7, 2019, when it flew to Sundance Airport in Oklahoma City and then left Oklahoma City that same day to fly to Dallas, Texas.[10]

29. On October 3, 2019, Skyline brought an action against Conkle in the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2019-5571 (the "State Court Action") to quiet title to the Aircraft due to the Mechanic's Lien. Plaintiff Ex. 3, pp. PX1.00009–00017.

30. At some point before the Judgment (defined below) was entered in the State Court Action, a third party paid Conkle the $500.00 allegedly due from Contractor, and Conkle subsequently released the Mechanic's Lien without any payment from Skyline.

31. The Aircraft was sold in late 2020.

32. The State Court granted judgment in favor of Skyline and awarded Skyline $18,006.81 in actual damages, $9,245.15 in attorney's fees, $214.14 in costs, and post-judgment interest accrued and accruing from the date of the State Court's Order on Damages (collectively,

---

[10] The FlightAware log belies Allen's testimony the Aircraft was never at Wiley Post Airport, as it was actually there for an extended period of time. Notwithstanding these facts, based on Skyline's own exhibit, Allen labeled Conkle a "liar" only to later prove himself wrong. Allen also claimed, late in the trial on re-direct examination, the Aircraft had to be sitting at Sundance Airport prior to the FlightAware log dates provided (but, of course, such log was not in evidence). Given his emphatic denial the Aircraft was ever at Wiley Post Airport, the Court gives Allen's testimony on this point little credence.

8

the "Judgment").[11]  Stipulated Fact ¶ 7; Plaintiff Ex. 3, pp. PX1.00100–00102 and 00103–00104.

33. The Judgment merely states the Mechanic's Lien was untimely and otherwise invalid under Oklahoma law.  Plaintiff Ex. 3, pp. PX1.00100–00101.  It contains no findings of fraud or fraudulent conduct.

34. As a witness,[12] Allen was arrogant and condescending when being cross-examined, refusing to answer yes or no questions directly without explanation notwithstanding repeated direction from the Court.  Allen also gave inconsistent testimony regarding dates concerning the location of the Aircraft, the work performed by Conkle and his review thereof, and receipt of the Final Invoice.

35. While Allen testified he believed Conkle created an elaborate Mechanic's Lien scheme to obtain $3,548.00 from Skyline, given the facts in evidence, as well as the absence of relevant facts, and Allen's demeanor, the Court believes his belief to be unfounded.

36. Both Contractor and Conkle were listed as witnesses by Skyline in the Final Pretrial Order but neither was called as a witness at trial.

## CONCLUSIONS OF LAW

Skyline seeks to except the State Court Judgment from Conkle's discharge pursuant to 11 U.S.C. § 523(a), specifically Section 523(a)(2)(A) and (a)(6). "By design, the Bankruptcy

---

[11] Skyline incurred legal bills to clear title to the Aircraft, and the Aircraft suffered depreciation during the 9 month period between filing of the Mechanic's Lien and entry of the Judgment removing the Mechanic's Lien from the Aircraft's title.  Allen testified the depreciation is difficult to ascertain but estimated it could be $10,000.00-17,000.00 depending on the market.  Additionally, Skyline was forced to continue to make payments on a loan secured by the Aircraft ($1,300.00-1,400.00/month) and hangar rental ($600.00/month approximately).

[12] The Court found the examination of Allen by his own counsel to be unorganized and difficult to follow.

Code limits the opportunity for a completely unencumbered beginning to the 'honest but unfortunate debtor.'" Perry v. Judge (In re Judge), 630 B.R. 338, 344 (10th Cir. BAP 2021) (citing Bank One, A Nat'l Banking Ass'n v. Kallstrom (In re Kallstrom), 298 B.R. 753, 758 (10th Cir. BAP 2003) (citing Grogan v. Garner, 498 U.S. 279, 287 (1991))). As a result, the exceptions to discharge contained in Section 523(a) are narrowly construed, with any doubt to be resolved in the debtor's favor. Diamond v. Vickery (In re Vickery), 488 B.R 680, 685-86 (10th Cir. BAP 2013) (citing Okla. Dep't of Secs. ex rel. Faught v. Wilcox, 691 F.3d 1171, 1174 (10th Cir. 2012)). The plaintiff bears the burden of proving nondischargeability under Section 523(a) by a preponderance of the evidence. Grogan, 498 U.S. at 286–91.

In this adversary proceeding, Skyline has not satisfied this burden.

I. **SKYLINE DID NOT SATISFY ITS BURDEN OF PROOF UNDER SECTION 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from an individual debtor's bankruptcy discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." See 11 U.S.C. § 523(a)(2)(A). The remedy available to a creditor under Section 523(a)(2)(A) is a "tailored remedy." Ford v. Frey (In re Frey), 652 B.R. 688, 694 (Bankr. D. Kan. 2023) (citing Husky Int'l Elecs., Inc. v. Ritz, 578 U.S. 355, 364 (2016)). As it is a tailored remedy to be narrowly construed, the creditor plaintiff must prove its claim squarely fits the defined parameters of Section 523(a)(2)(A). Oasis, Inc. v. Fiorillo, 246 F. Supp. 3d 489, 492-93 (D. Mass. 2017) (citing McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001)).

A.  **The State Court Judgment is not a Debt for Money, Property, Services, or an Extension of Credit Obtained by Debtor as Required by Section 523(a)(2)(A)**.

The United States Supreme Court has explained, "the phrase 'to the extent obtained by' in Section 523(a)(2)(A) . . . modifies 'money, property, services, or . . . credit'—not 'any debt'—so that the exception encompasses 'any debt . . . for money, property, services, or . . . credit, to the extent [that the money, property, services, or . . . credit is] obtained by' fraud." Cohen v. de la Cruz, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (alterations in original).  In Cohen, the Supreme Court made clear Section 523(a)(2) "encompasses any liability arising *from money, property, etc., that is fraudulently obtained.*" Cohen, 523 U.S. at 223 (emphasis added).  But the specific money or property must be obtained by fraud.  Cohen, 523 U.S. at 218.  Cohen, therefore, requires not only a debtor's false representation, false pretense, or fraud cause the creditor plaintiff to have sustained a loss but also requires the loss be in the form of money, property, services, or credit obtained through the false representation, false pretenses, or fraud.  Grange Ins. Ass'n v. Woods (In re Woods), 660 B.R. 905, 924 (10th Cir. BAP 2024).[13]  Thus, to fall within the scope of Section 523(a)(2)(A), Skyline must establish the State Court Judgment is a debt for money, property, services, or credit obtained by false representation, false pretenses, or fraud.  Cohen, 523 U.S. at 218-19.

---

[13] Nunery v. Rountree (In re Rountree), 478 F.3d 215, 219-20 (4th Cir. 2007) (The Court recognized Section 523(a)(2)(A) is designed "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means."); Michael v. Savinell (In re Savinell), 661 B.R. 829, 839-40 (Bankr. S.D. Ohio 2024) (citing Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert), 141 F.3d 277, 280–81 (6th Cir.1998)  ("The law of the Sixth Circuit is consistent with Cohen, also imposing the requirement that the "debtor obtained money or services through a material misrepresentation.")); Aslakson v. Freese (In re Freese), 472 B.R. 907, 919 (Bankr. D. N.D. 2012) ("To satisfy the threshold showing in Section 523(a)(2)(A), [plaintiff] must show [debtor] fraudulently obtained something from him, not simply that [debtor] engaged in fraud that resulted in a debt owed to [plaintiff].").

11

In the Final Pretrial Order, Skyline contends Conkle's filing of the fraudulent Mechanic's Lien with the FAA resulted in Conkle being enriched. However, the evidence failed to establish Conkle was enriched thereby. Specifically, the record does not establish Conkle obtained "money, property, services, or any extension, renewal, or refinancing of credit" from Skyline by fraud, false pretenses, or false representation. Accepting the State Court Judgment arose from the Mechanic's Lien, which was filed out of time and contained a false date for the final work being performed by Conkle on the Aircraft therein, no evidence establishes Conkle received any money, property, services, or credit from Skyline as a result of the filing of the Mechanic's Lien with the FAA. To the contrary, the evidence is clear, Conkle received nothing from Skyline as a result thereof.

The State Court Judgment may have resulted from Conkle's wrongful filing of the Mechanic's Lien, but the debt is not a debt for money, property, services, or credit obtained by Conkle from Skyline, as he received nothing. See Oasis, Inc., 246 F. Supp. 3d at 492-93. The Kansas bankruptcy court in Frey, faced with a very similar situation, held a quiet title judgment based on a non-compliant mechanic's lien was not excepted from discharge under Section 523(a)(2)(A) because the debtor's mechanic's lien did not result in the debtor receiving any money as a result thereof and, consequently, failed to even state a claim. Frey, 652 B.R. at 694. See also Hatfield v. Thompson (In re Hatfield), 555 B.R. 1, 10 (10th Cir. BAP 2016) (To determine that a debt is excepted from discharge under Section 523(a)(2)(A) based on actual fraud, the creditor must show: (i) the debtor committed actual fraud; (ii) the debtor *obtained money, property, services or credit* by the actual fraud; and (iii) the debt arises from the actual fraud). Moreover, while Skyline was damaged as a result of the late Mechanic's Lien, Skyline

12

was not deceived by it. Welch v. Giron (In re Giron), 622 B.R. 92, 98 (Bankr. D. N.M. 2020) (citing Nelson v. Bolles (In re Bolles), 593 B.R. 832, 843 (Bankr. D. N.M. 2018)).

As such, Skyline's harm does not fall within the parameters of Section 523(a)(2)(A).

**B.       Skyline did not Prove by a Preponderance of the Evidence Conkle Possessed Fraudulent Intent in Filing the Mechanic's Lien.**

Even if Skyline established Conkle obtained money, property, services, or credit from Skyline by virtue of the filing of the Mechanic's Lien, which it did not, Skyline failed to prove by a preponderance of the evidence Conkle possessed the necessary intent under Section 523(a)(2)(A). Specifically, to establish Conkle's actions consisted of false representations, false pretenses, or actual fraud,[14] Skyline is required to establish Conkle "acted with the *subjective intent* to deceive [Skyline]." Vista Mfr. Home Cmty., L.P. v. Rodriguez (In re Rodriguez), 525 B.R. 485, 492 (Bankr. D. N.M. 2015) (citing DSC Nat'l Props. v. Johnson (In re Johnson), 477 B.R. 156, 169 (10th Cir. BAP 2012)) (emphasis in Johnson); Tobias v. Alvarado (In re Alvarado), 608 B.R. 877, 885 (Bankr. W.D. Okla. 2019).

Because a debtor will rarely admit fraudulent intent, "courts uniformly recognize it may be established by circumstantial evidence or by inferences drawn from a course of conduct or from the totality of the circumstances. The 'totality of the circumstances inquiry is fact specific and hinges on the credibility of witnesses.'" Alvarado, 608 B.R. at 885 (first citing First Nat'l Bank v. Cribbs (In re Cribbs), 327 B.R. 668, 673 (10th Cir. BAP 2005), aff'd, No. 05-6225, 2006 WL 1875366 (10th Cir. July 7, 2006); then citing Copper v. Lemke (In re Lemke), 423 B.R. 917, 922 (10th Cir. BAP 2010) (citing Fowler Brothers v. Young (In re Young), 91 F.3d 1367, 1375

---

[14] Skyline never identified on which of the three grounds for an exception to discharge under Section 523(a)(2)(A) it relies. However, because fraudulent intent is required for all three, and the Court finds no fraudulent intent, an analysis of the remaining separate elements of a claim for fraudulent representation, false pretenses, and fraud is unnecessary.

13

(10th Cir. 1996)); and then citing Graham v. Graham (In re Graham), 600 B.R. 90 (Bankr. D. Kan. 2019)). To find fraudulent intent based on circumstantial evidence, the Court considers whether "the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor.'" Rodriguez, 525 B.R. at 492 (citing Groetken v. Davis (In re Davis), 246 B.R. 646, 652 (10th Cir. BAP 2000), aff'd in part, vacated in part on other grounds, 35 F. App'x 826 (10th Cir. 2002) (quoting 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 47:16, n. 62 (1999))).

In this adversary proceeding, considering the totality of the circumstances, Skyline has not established, by a preponderance of the evidence, Conkle filed the Mechanic's Lien with actual intent to defraud Skyline. The exhibits, in no form or fashion, demonstrate Conkle acted with fraudulent intent in filing the Mechanic's Lien or in any other conduct directed toward Skyline. Moreover, because only Allen testified, and the exhibits admitted were limited, the Court was forced to look at the picture painted by Allen, and Allen alone, who was not the actor in question. Allen was not a credible witness and, based on his account, had only limited communications with Conkle, which failed to establish Conkle acted with fraudulent intent.

Allen emphatically believes Skyline owed no further monies to Conkle after December 2018. On the other hand, Allen testified he was repeatedly contacted by Conkle in June of 2019 (and thereafter until he was blocked by Allen) regarding $3,548.00 being owed to him by Skyline for labor performed. Allen testified Skyline owed Conkle nothing; however, he had no evidence it was not owed, nor did he have any correspondence between himself and Conkle establishing no further monies were owed.

The difficulty in this adversary proceeding is Skyline had the burden of proof by a preponderance of the evidence to establish Conkle acted with the subjective intent to deceive

14

Skyline. "The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California, 508 U.S. 602, 622, 113 S. Ct. 2264, 2279, 124 L. Ed. 2d 539 (1993) (citing In re Winship, 397 U.S. 358, 371-372, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) (brackets in original) (citation omitted)).

Here, and as stated on the record at the conclusion of trial, the Court cannot conclude, from the totality of the circumstances, Conkle deliberately made false representations to induce Skyline to act, i.e. pay Conkle. While the Stipulated Facts provide the Mechanic's Lien was not timely filed within the FAA statutory requirements, and no work on the Aircraft was completed after December 2018 contrary to Conkle's representation on the Mechanic's Lien, no evidence establishes Conkle's intent when he filed the Mechanic's Lien was more probably than not to deceive Skyline. The Stipulated Fact that the Mechanic's Lien was not filed within the statutory timeframe, without more, does not equate to Conkle knowing and understanding the statutory limitations when he filed the Mechanic's Lien or that he intended to deceive or mislead Skyline into paying him. Additionally, the evidence shows Conkle sought payment from Skyline as late as August 2019, which, at a minimum, suggests he believed he was owed money, with his filing of the Mechanic's Lien buttressing this inference. And, after he filed the Mechanic's Lien, Skyline filed the State Court Action, and Conkle subsequently released the Mechanic's Lien, which suggests nothing more than Conkle then understood his lien was untimely. The facts do not, however, establish it is more probable than not Conkle knew the Mechanic's Lien was false

15

and untimely when he filed it but nevertheless decided to file it in an effort to fraudulently obtain payment from Skyline to which he was not otherwise entitled.

In short, the totality of the circumstances does not establish Conkle intended to defraud Skyline by a preponderance of the evidence.

_____

Consequently, based on Skyline's failure to establish (i) the State Court Judgment evidences a debt for money, property, services, or credit obtained as a result of the false and untimely Mechanic's Lien and (ii) Conkle's fraudulent intent in filing the Mechanic's Lien, Conkle is entitled to judgment in his favor and against Skyline on its Section 523(a)(2)(A) claim.

## II.   SKYLINE DID NOT SATISFY ITS BURDEN OF PROOF UNDER SECTION 523(a)(6).

To prevail on a claim under Section 523(a)(6), a creditor must prove the debtor's objectionable conduct caused "willful and malicious injury." To prevail under Section 523(a)(6), Skyline was required to prove both a willful act and a malicious injury. Judge, 630 B.R. at 344 (citing Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004)). The willful and malicious standard is stringent, and Section 523(a)(6) generally encompasses intentional torts, with debt arising from recklessness or negligence not within its scope. Judge, 630 B.R. at 344 (citing Barenberg v. Burton (In re Burton), 463 B.R. 142, 2010 WL 3422584, *6 (10th Cir. BAP August 31, 2010) (citing Kawaauhau v. Geiger, 523 US 57, 64 (1998))); Frey, 652 B.R. at 697-98; AVB Bank v. Costigan (In re Costigan), 2017 WL 6759068, at *5 (Bankr. E.D. Okla. 2017); Country Club Bank v. Polese (In re Polese), 2011 WL 1299252, at *3 (Bankr. D. Kan. 2011) (citing Geiger, 523 US at 64).

### A.   Skyline did not Establish Willful Injury under Section 523(a)(6).

To qualify as a willful injury under Section 523(a)(6), "there must be a deliberate or

16

intentional injury, not merely a 'deliberate or intentional act that leads to injury.'" First Am.Title Ins. Co. v. Smith (In re Smith), 618 B.R. 901, 912 (10th Cir. BAP 2020) (citing Geiger, 523 U.S. at 61-62). The "'willful and malicious injury" exception under Section 523(a)(6) is also a subjective standard and "turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When injury was 'neither desired nor in fact anticipated by the debtor,' it is outside the scope of the statute." Via Christi Reg'l Med. Center v. Englehart (In re Englehart), 229 F.3d 1163, 2000 WL 1275614, at *3 (10th Cir. 2000) (citing Geiger, 523 U.S. at 62).

      Under Section 523(a)(6), the debtor must have the actual intent to injure the plaintiff creditor, and the plaintiff creditor must present evidence respecting the debtor's state of mind. Specifically, the debtor must have known of a creditor's rights and known with substantial certainty that injury would result from the action taken. Judge, 630 B.R. at 344 (holding debtor must have wished to cause injury or at least believed it was substantially certain to occur). Here, Conkle clearly understood the FAA system provided a mechanism to seek payment by asserting a lien on a covered airplane or he would not have gone to the trouble to file the Mechanic's Lien. However, intent under Section 523(a)(6) requires more than knowledge Skyline would be affected by the lien filing; it requires an intentional injury. Frey, 652 B.R. at 697. No evidence establishes Conkle intentionally filed the Mechanic's Lien in order to skuttle a sale of the Aircraft, which is the harm of which Skyline complains. Furthermore, based on the totality of the evidence, including Conkle's subsequent release of the Mechanic's Lien after the State Court Action was filed, it is as equally probable Conkle's intent in filing the Mechanic's Lien was to be paid $3,548.00 for unpaid labor which is entirely consistent with his actions including sending an invoice and repeatedly asking for payment.

17

Consequently, Skyline failed to establish Conkle had the necessary subjective intent to injure Skyline required by Section 523(a)(6).

      **B.**    <u>**Skyline did not Establish Malicious Injury under Section 523(a)(6).**</u>

Malicious injury under Section 523(a)(6) "'requires a wrongful act done without just cause or excuse by a debtor who intended the resulting injury.'" <u>Wood v. Hortman</u> (<u>In re Hortman</u>), 2022 WL 272146, at *7 (Bankr. D. Utah 2022) (citing <u>In re Johns</u>, 397 B.R. 544, 548 (10th Cir. BAP 2008)).  Malicious intent is established by "evidence that the debtor had knowledge of another's rights and, notwithstanding such knowledge, proceeded to take action in violation of those rights." <u>Judge</u>, 630 B.R. at 344 (citing <u>Dorr, Bentley & Pecha v. Pasek</u> (<u>In re Pasek</u>), 983 F.2d 1524, 1526 (10th Cir. 1993) (citing <u>C.I.T. Financial Servs. Inc. v. Posta</u> (<u>In re Posta</u>), 866 F.2d 364, 367 (10th Cir. 1989))).  The mere fact a debtor's conduct was deliberate is not enough to establish maliciousness under Section 523(a)(6). <u>Hagmaier v. Cooley</u> (<u>In re Cooley</u>), 551 B.R. 498, 504 (Bankr. W.D. Okla. 2016) (citing <u>Lewis v. Long</u> (<u>In re Long</u>), 528 B.R 655 (Bankr. W.D. Okla. 2015)).  Conkle must have acted intending to commit a wrongful act he knew or anticipated would injure Skyline. <u>Parker v. Parker</u> (<u>In re Parker</u>), 2016 WL 690928, at *3 (Bankr. E.D. Okla. 2016) (citing <u>Hernandez v. Musgrave</u> (<u>In re Musgrave</u>), 2011 WL 3122883 (10th Cir. BAP 2011)).

"'[E]vidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.'" <u>Smith</u>, 618 B.R. at 919 (citing <u>Pasek</u>, 983 F.2d at 1527).  Section 523(a)(6) requires the debtor be *conscious* that his actions are wrongful. <u>Kanaga v. Landon</u> (<u>In re Landon</u>), 657 B.R. 128, 140 (Bankr. N.D. Okla. 2024) (first citing <u>Glencove Holdings, LLC v. Bloom</u> (<u>In re Bloom</u>, 2022 WL 2679049, at *7 (10th Cir. 2022) (citing <u>Smith</u>, 618 B.R. at 919); then citing <u>Old Republic</u>

18

Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013) ("The injury must have been committed in 'conscious disregard of one's duties.'"); and then citing ABF, Inc. v. Russell (In re Russell), 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001) (citations omitted) ("[A] debtor's actions are not automatically labeled malicious simply because they are wrongful. There must also be a consciousness of wrongdoing. It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious injury under § 523(a)(6). Without it there can be no 'conscious disregard of one's duties,' only an unconscious one.")). Accordingly, determining if the injury was a malicious injury turns on Conkle's subjective intent as well.

While Conkle acted intentionally in filing the Mechanic's Lien, the evidence does not establish he intended to harm Skyline any more than it establishes he was seeking to obtain payment for an unpaid invoice. Skyline is required to establish by a preponderance of the evidence Conkle desired to cause the consequences of his act or was substantially certain such consequences would result therefrom. Cocoma v. Nigam (In re Nigam), 780 F. App'x 559, 563 (10th Cir. 2019) (citing Moore, 357 F.3d at 1129). However, there is no evidence Conkle intended to harm Skyline by preventing a sale of the Aircraft because there is no evidence Conkle was a sophisticated subcontractor with knowledge of the airline industry, specifically the buying and selling of airplanes, the filing of liens on airplanes, and the impact a mechanic's lien has on the ability for an owner to sell an aircraft.[15] As with willful intent, the evidentiary record does not establish Conkle knew and understood Skyline's rights or that its ability to sell the Aircraft would be hindered, if not rendered impossible, by the filing of the untimely Mechanic's

---

[15] The only invoice issued by Conkle in the record (Rebuttal Ex. 1) suggests he was relatively unsophisticated given it is handwritten and simple.

19

Lien and, nevertheless, chose to file it anyway. Further, the record establishes Conkle released the Mechanic's Lien without payment from Skyline after it filed the State Court Action.

Based on the record presented, there is no evidence establishing Conkle filed the Mechanic's Lien knowing his actions were wrongful and would likely harm Skyline. The record suggests, at best, negligence in filing an untimely Mechanic's Lien containing a false work termination date but nothing amounting to malicious conduct. And, nothing in the State Court Judgment suggests Conkle filed the Mechanic's Lien knowing it was untimely and invalid and desired to harm Skyline.

_____

As with all claims under Section 523(a), Skyline bore the burden of establishing by a preponderance of the evidence Conkle intended to injure Skyline and did so knowing his actions were wrongful and without justification. Considering the totality of the circumstances based on the evidence presented by Skyline only, which was minimal at best, the Court concludes the record contains no evidence establishing Conkle's state of mind in filing the Mechanic's Lien. Skyline failed to focus on Conkle's intent, a necessary element of a Section 523(a)(6) claim. In the absence of any evidence suggesting willful and malicious injury by Conkle, judgment must be entered in favor of Conkle and against Skyline on the Section 523(a)(6) claim.

## **CONCLUSION**

For the reasons set forth above, judgment will be entered in favor of Conkle and against Skyline on both of its claims under Section 523(a)(2)(A) and (6). A separate judgment will be entered.

IT IS SO ORDERED.

# # #